1

2

3          **E-FILED on ___5/20/05___**

4

5

6

7                IN THE UNITED STATES DISTRICT COURT

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                     SAN JOSE DIVISION

10

11   JEANNETTE CARDENAS, individually and as          No. C-05-00845 RMW
     Guardian ad Litem of RODOLFO CARDENAS,
12   JESSICA CARDENAS, and RUBEN                       ORDER GRANTING IN PART AND
     CARDENAS, minors; REGINA CARDENAS,               DENYING IN PART DEFENDANTS'
13   individually; CORINA CARDENAS, individually,     MOTION TO DISMISS AND DENYING
                                                      PLAINTIFFS' MOTION TO REMAND
14              Plaintiffs,                            ACTION TO STATE COURT

15         v.                                          **[Re Docket Nos. 5, 14]**

16   STATE OF CALIFORNIA, a public entity;
     MICHAEL WALKER, individually; and DOES 1
17   to 50,

18              Defendants.

19
     DORA BARELA, individually and as Successor in
20   interest for RODOLFO CARDENAS, deceased,

21              Plaintiff,

22         v.

23   STATE OF CALIFORNIA, et al.,

24              Defendants.

25

26         This is a civil rights action stemming from events leading to the death of Rodolfo Cardenas

27   ("Cardenas"). The state of California, the California Department of Justice, the California Department of

28   Corrections, the Parole Fugitive Apprehension Team, the Bureau of Narcotics Enforcement, Officer

Michael Walker ("Walker"), Officer Jason Lara ("Lara"), Special Agent Steve Davies ("Davies"), Officer Brian Link ("Link"), and Officer Cesar Sanchez ("Sanchez") (collectively "defendants") move to dismiss portions of a complaint in intervention (" the complaint") filed by plaintiff Dora Barela ("Barela"), Cardenas' mother.  Cardenas' wife and children ("the Cardenas plaintiffs") also move to remand the case to state court.  The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court grants in part and denies in part defendants' motion to dismiss and denies the Cardenas plaintiffs' motion to remand.

## I. BACKGROUND

Barela's complaint alleges that, on February 17, 2004, the individual defendants were staking out a house in San Jose.  Compl. ¶ 19.  Defendants were looking to arrest an individual, David Gonzales, for a parole violation.  *Id*.  Barela asserts that defendants mistook Cardenas for Gonzales, even though the two men did not look alike.  *Id*. at ¶ 20.  Defendants pursued Cardenas in unmarked cars, without lights or sirens, at a high rate of speed and in a reckless manner.  *Id.* at ¶ 21.  Cardenas stopped his van and tried to flee on foot.  *Id*. at ¶ 22.  Walker, wearing plain clothes and not identifiable as a police officer, got out of his unmarked car and, with other defendants, pursued Cardenas.  *Id.* at ¶ 23.  Cardenas had nothing in his hands and was not threatening anyone.  *Id*. at ¶¶ 24, 27.  Without warning, Walker shot Cardenas in the back.  *Id.* ¶ 24.

Walker, Lara, Davies, Link, and Sanchez searched and handcuffed Cardenas.  *Id*. at 25.  Despite the fact that Cardenas needed immediate medical care, defendants refused to let paramedics help him.  *Id*. Cardenas was "awake and alert" immediately after the shooting, and was in "extreme conscious pain."  *Id*. at 31.  Following the shooting, defendants gave false statements, concealed or altered evidence, and tampered with witnesses to exonerate themselves.  *Id*. at ¶¶ 32, 33.  Barela alleges the investigation did not conform to accepted police standards and practices, and was biased in defendants' favor.  *Id.* ¶ 34.

Cardenas died intestate.  The Cardenas plaintiffs brought suit on July 19, 2004 against defendants for wrongful death and excessive use of force.  The parties stipulated to allow Barela to join the lawsuit as a plaintiff.  Barela claims that she relied on Cardenas for "financial and other support" at the time of his death.

1   *Id*. at ¶ 2.[1]  Barela sued defendants for (1) violation of 42 U.S.C. § 1983 ("section 1983"), including

2   violations of the Fourth and Fourteenth Amendments of the United States Constitution, (2) violation of

3   Article I, sections 1 and 13 of the California Constitution, (3) violation of California Civil Code § 52.1, (4)

4   negligence, and (5) assault and battery.[2]

5        Defendants removed the action to federal court on February 28, 2005.  The Cardenas plaintiffs

6   brought a motion to remand on March 30, 2005.

## II.  ANALYSIS

### A.    Standard for Dismissal

9        Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a

10  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*

11  *v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept the facts alleged in

12  the complaint as true.  *Id*.  "A complaint should not be dismissed 'unless it appears beyond doubt that the

13  plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Gilligan v.*

14  *Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46

15  (1957)).  In addition, "[c]ivil rights complaints are to be liberally construed."  *Buckey v. County of Los*

16  *Angeles,* 968 F.2d 791, 794 (9th Cir. 1992).

### B.    Standing

#### 1.    Survival Claim

19       Defendants first challenge Barela's ability to seek redress for Cardenas' death.  Under California,

20  there are two means by which a plaintiff can bring a claim stemming from someone else's death: survival and

21  wrongful death actions.  In a survival action, the plaintiff "steps into the shoes" of the decedent: "[s]urvival

22  statutes . . . seek damages for a decedent's injuries and harm sustained prior to the death of the decedent.

23  Recovery becomes an asset of the decedent's estate."  *In re Estate of Lowrie*, 118 Cal. App. 4th 220,

---

26       [1]     In a declaration, Barela claims to be Cardenas' "successor in interest" under California
Code of Civil Procedure section 377.11.  Barela Decl. ¶ 4.

27       [2]     Barela's assault and battery claim is only against Walker and the state entities, and is not at

28  issue in this motion.

1  226 n.3 (2004).  California's survival statute, Code of Civil Procedure section 377.30, entitles

2  "successor[s] in interest" to bring such actions:

3         A cause of action that survives the death of the person entitled to commence an
         action or proceeding passes to the decedent's successor in interest, subject to
4         Chapter 1 (commencing with Section 7000) of Part 1 of Division 7 of the Probate
         Code, and an action may be commenced by the decedent's personal representative
5         or, if none, by the decedent's successor in interest.

6  In turn, California Probate Code section 7000 provides that title to the property of a decedent who dies

7  intestate passes to the decedent's heirs according to the laws of intestate succession.  Also, California's

8  Code of Civil Procedure defines "successor in interest" as "the beneficiary of the decedent's estate or other

9  successor in interest who succeeds to a cause of action or to a particular item of the property that is the

10  subject of a cause of action." § 377.11.[3]  Thus, a plaintiff may be able to bring a survival action if she is (1)

11  the beneficiary of the decedent's estate, (2) an heir under the laws of intestate succession, or (3) the

12  decedent's personal representative.  Barela does not  meet these requirements.  For one, Barela does not

13  allege that she stands to take from Cardenas' estate by virtue of any testamentary document.  In addition,

14  because Cardenas' wife and children survived him, Barela, is not an heir under the rules of intestate

15  succession.  *See* Cal. Prob. Code §§ 6401(c)(2)(B) and 6402(b) (decedent's parent is only heir if he has

16  no surviving spouse or children); *cf. Lowrie*, 118 Cal. App. 4th at 227-31 (plaintiff had standing to bring

17  Elder Abuse claim on behalf of grandfather because she took from his estate).

18        Barela does, however, have standing to assert a wrongful death claim.  In contrast to a survival

19  action, wrongful death claims "belong to the 'decedent's heirs and other specified relations   . . . and are

20  meant to compensate them for their own losses resulting from the decedent's death." *Lowrie*, 118 Cal.

21  App. 4th at 226 n.3 (quoting Cal. Elder Law Litigation: An Advocate's Guide,§

22  6.46, at 411).  California's wrongful death statute provides:

23         A cause of action for the death of a person caused by the wrongful act or neglect of
         another may be asserted by any of the following persons or by the decedent's
24         personal representative *on their behalf*:
         (a) The decedent's surviving spouse, domestic partner, children, and issue of
25         deceased children, or, if there is no surviving issue of the decedent, the persons,

26

27        [3]      Damages available in survival actions "are limited to the loss or damage that the decedent
sustained or incurred before death . . . and do not include damages for pain, suffering, or disfigurement."
28  Cal. Code Civ. Proc. § 377.34.

1

including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.

2

(b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents.

3

4

Cal Code Civ. Proc. § 377.60 (emphasis added).[4]  Because Barela alleges that she was financially

5

dependent on Cardenas, she has standing to assert a wrongful death claim under section 377.60(b).

6

Barela then argues that her ability to bring a wrongful death cause of action also entitles her to bring

7

a survival cause of action.  Barela claims that, as a financially dependent parent, she "succeeds" to wrongful

8

death cause of action.  According to Barela, this "succession" transforms her into a "successor in interest"

9

under the survival statute.  Barela is mistaken.  A wrongful death cause of action "arises on the death of the

10

injured person." *Grant v. McAuliffe,* 41 Cal.2d 859, 864 (1953).  To be a "successor in interest" under

11

the survival statute, Barela must have obtained a cause of action that Cardenas could have brought *on his*

12

*own behalf* had he survived.  *See* Cal. Code Civ. Proc. § 377.11 ("successor in interest" must receive

13

cause of action as "beneficiary of the decedent's estate").  Of course, had Cardenas lived, he could not

14

have brought a wrongful death claim on his own behalf.  Thus, the fact that Barela has standing under the

15

wrongful death statute has no bearing on the issue of whether she has standing under the survival statute.

16

The court thus dismisses her survival claim without prejudice.[5]

17

**2.      Fourth Amendment Claim**

18

Next, defendants argue that Barela cannot maintain a section 1983 civil rights claim for violation of

19

Cardenas' Fourth Amendment rights.[6]  Compl. ¶¶ 37-42.  In *Rakas v. Illinois,* 439 U.S. 128 (1969), the

20

21

[4]      Damages for wrongful death can include recovery for loss of love and companionship as well as loss of financial support.  *See Krouse v. Graham,* 19 Cal. 3d 59, **7**2 (1977).

22

23

[5]      Accordingly, the court need not address Barela's contention that she may seek damages for Cardenas' pain and suffering under section 1983 and 42 U.S.C. § 1988(a).  Such damages are only available, if at all, in survival actions.  *Compare Garcia v. Whitehead,* 961 F.Supp. 230, 233 (C.D. Cal. 1997) (pain and suffering damages available under section 1983) *and Williams v. City of Oakland,* 915 F.Supp. 1074 (N.D. Cal. 1996) (same) *and Guyton v. Phillips,* 532 F.Supp. 1154 (N.D. Cal. 1981) (same) *with Venerable v. City of Sacramento,* 185 F. Supp. 2d 1128, 1130, 1132-33 (E.D. Cal. 2002) ("[b]ecause state law does not permit recovery of a decedent's pain and suffering, [plaintiff's] claim for pain and suffering from injury leading to death does not survive and will be dismissed").  Because Barela cannot assert a survival action, she cannot recover for Cardenas' pain and suffering.

24

25

26

27

[6]      Defendants acknowledge that Barela can assert a claim for loss of familial relationship in violation of the Fourteenth Amendment through section 1983.

28

1   Supreme Court established that "Fourth Amendment rights are personal rights which, like some other

2   constitutional rights, may not be vicariously asserted." *Id*. at 133-34 (quoting *Alderman v. United States*,

3   394 U.S. 165, 174 (1969)).  The Ninth Circuit recognizes an exception to this rule for survival actions

4   under section 1983:

5           [T]he general rule is that only the person whose Fourth Amendment rights were
        violated can sue to vindicate those rights.  In [section] 1983 actions, however, the
6       survivors of an individual killed as a result of an officer's excessive use of force may
        assert a Fourth Amendment claim on that individual's behalf if the relevant state's law
7       authorizes a survival action. The party seeking to bring a survival action bears the
        burden of demonstrating that a particular state's law authorizes a survival action and
8       that the plaintiff meets that state's requirements for bringing a survival action.

9    *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998) (citations

10   omitted).  Because Barela does not have standing to assert a survival action, her Fourth Amendment claim

11   must fail.

12          Barela contends that she has standing to assert Cardenas' Fourth Amendment rights under 42

13   U.S.C. § 1988(a).  That provision requires courts to look to state law to resolve damages issues under

14   section 1983 but forbids courts from applying state law when it is "inconsistent with the Constitution and

15   laws of the United States." *Id*.[7]  Barela cites *Galindo v. Brownell*, 255 F. Supp. 930 (S.D. Cal. 1966),

16   *Alvarez v. Wiley*, 71 Cal. App. 3d 599 (1977), *Garcia v. Superior Court*, 42 Cal. App. 4th 177 (1996),

17   *Davis v. City of Ellensburg*, 651 F. Supp. 1248 (E.D. Wash. 1987), and *Venerable v. City of*

18   *Sacramento*, 185 F. Supp. 2d 1128 (E.D. Cal. 2002) for the proposition that denying her claim for

19   violation of Cardenas' Fourth Amendment rights would be inconsistent with the federal Constitution.

20   Barela's authority is not persuasive.  For one, *Galindo* (1) preceded *Rakas* and (2) while noting that it

21   involves fatal police shooting, does not specify whether the decedent's Fourth Amendment rights or the

22

23   _____

24          [7]         That section provides that federal courts shall exercise their jurisdiction

25          in conformity with the laws of the United States, so far as such laws are suitable to carry
        the same into effect; but in all cases where they are not adapted to the object, or are
26      deficient in the provisions necessary to furnish suitable remedies and punish offenses against
        law, the common law, as modified and changed by the constitution and statutes of the State
27      wherein the court having jurisdiction of such civil or criminal cause is held . . . .

28   42 U.S.C. § 1988.

1   plaintiff's Fourteenth Amendment rights are at issue. *See Galindo*, 255 F. Supp. at 931.[8]   Second,

2   *Alvarez* held only that equitable relief was unavailable under section 1983 in a wrongful death action, and

3   thus is wholly inapposite. *See Alvarez*, 71 Cal. App. 3d at 604.  Third, *Garcia* held that the decedent's

4   sister had standing to bring a section 1983 survival action "in her capacity as representative of his estate."

5   *Garcia*, 42 Cal. App. 4th at 179. *Garcia* distinguished this "recovery by the representative of the estate"

6   from "a wrongful death action by decedent's heirs." *Id*. at 186-87.  Fourth, *Davis* involved Washington

7   law and resolved the narrow issue of whether a wrongful death action brought on behalf of the decedent's

8   parents was barred by their failure to allege dependency. *See Davis*, 651 F. Supp. at 1257.  Finally,

9   *Venerable* supports defendants' position.  In that case, parents and children of the decedent brought a

10  section 1983 claim and a state wrongful death action.  The court held that the children had standing to bring

11  a survival action on behalf of the decedent as his "successors in interest." *See Venerable*, 185 F. Supp. 2d

12  at 1130.  The court also noted that the decedent's mother could bring a survival action *on the children's*

13  *behalf* as their guardian *ad litem*. *See id*.  However, the decedent's father conceded that he "may only be

14  a party to the fourteenth amendment claim for deprivation of the right to familial association with his son."

15  *Id*. at 1130 n.3.  Thus, the court dismisses Barela's Fourth Amendment claim without prejudice.[9]

16          **3.    Bane Act Claims**

17          Defendants also challenge Barela's attempt to bring claims under the Bane Act, California Civil

18  Code section 52.1(a), (b).  Compl. ¶¶ 46-48.  The Bane Act provides that

19  _____

20      [8]      As noted, plaintiffs can bring a claim for loss of a familial relationship in violation of the
    Fourteenth Amendment through section 1983 even if they lack Fourth Amendment standing.

21      [9]      At oral argument, Barela's counsel suggested that *Moreland* held that plaintiffs can seek to
22  vindicate other people's Fourth Amendment rights under section 377.60. *Moreland*, which involved
    Nevada law, did indeed remark in *dicta* that section 377.60 gives "a . . . right extending to family members
23  or heirs to bring a survival action independent or in lieu of the estate's claim." *Moreland*, 159 F.3d at 370.
    However, the court respectfully submits that *Moreland* is mistaken about section 377.60.  Section
24  377.60(b) does *not* authorize a survival action:
            Unlike other provisions of this chapter that relate to causes of action belonging
25          to the decedent, this article relates to a cause of action for the decedent's
            wrongful death, which belongs not to the decedent, but to the persons specified
26          in this section.  Thus, the cause of action is not property in the estate of the
            decedent.
27  Cal. Civ. Proc. Code § 377.60(b), Law Revision Commission Comment, 2004 Main Volume, 1992
    Addition; *see also Dillard v. Curtis*, 2004 WL 2496130, *7 fn. 5 (N.D. Cal. 2004) (distinguishing
28  survival and wrongful death causes of action in the section 1983 context).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS'
MOTION TO REMAND ACTION TO STATE COURT— C05-00845 RMW
JED/DOH                                                7

1

2

3

4

> [a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with . . . may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

5

6

*Id*.

In *Bay Area Rapid Transit v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995) ("*BART*"), the

7

parents of a teenager who was killed by a police officer sued the officer and the subway system that

8

employed him for wrongful death and civil rights violations made actionable by the Bane Act. The trial

9

court overruled defendants' demurrer. The court of appeal reversed, reasoning that the Bane Act cannot

10

apply vicariously:

11

12

13

> We have no wish to denigrate in any way the degree of the loss suffered by the [parents], or indeed for the loss of a child by any parent. We cannot, however, accept the particular legal theory advanced in support of the [parent's] attempt to include a Bane Act cause of action in their lawsuit for wrongful death. The Bane Act is simply not a wrongful death provision. It clearly provides for a personal cause of action for the victim of a hate crime.

14

*Id*. at 144.

15

16

Barela argues *BART* is no longer good law. *BART* relied on *Boccato v. City of Hermosa Beach*,

29 Cal. App. 4th 1797, 1809 (1994) for the proposition that the Bane Act

17

18

19

> must be read in conjunction with section 51.7, which provides that all persons have the right to be free from 'violence, or intimidation by threat of violence committed against their persons' because of race, color, religion, ancestry, etc. This reinforces the rational interpretation of the Bane Act, i.e., that it is limited to plaintiffs who themselves have been the subject of violence or threats.

20

21

*BART*, 38 Cal. App. 4th at 144. However, in 2000, the California Legislature overruled *Boccato*. *See*

Stats. 2001, c. 261 (A.B. 587) ("[i]t is the intent of the Legislature in enacting this act to clarify that an

22

action brought pursuant to Section 52.1 of the Civil Code does not require the individual . . . to be a

23

member of a protected class identified by race, color, religion, or sex, among other things"). Barela

24

contends that, by overruling *Boccato*, the Legislature concomitantly overruled *BART*.

25

The court disagrees. For one, *BART* relied on more than just *Boccato*. The court also declined to

26

find that the Bane Act applied derivatively "[i]n the absence of a clear legislative intent." *BART*, 38 Cal.

27

App. 4th at 145. The fact that the Legislature subsequently amended the Bane Act—but did not mention

28

*BART*—suggests that the court was correct. Moreover, the Bane Act only protects plaintiffs "whose

1   exercise or enjoyment of rights" have been violated by "threats, intimidation, or coercion."  *See* Cal. Civ.

2   Code § 51(a) & (b).  If the Legislature truly intended the Bane Act to serve as a wrongful death statute,

3   these words would be odd choices.  "Threats, intimidation, or coercion" are felt most intensely in person.

4   Plaintiffs like Barela are one step removed: indeed, defendants' alleged wrongdoing was directed at

5   Cardenas.[10]  Thus, because the Bane Act is not a wrongful death statute, the court dismisses Barela's Bane

6   Act claim without prejudice.

7                           **4.   Injunctive Relief**

8          Finally, defendants argue that Barela lacks standing to sue for injunctive relief.  Compl. at 18.  To

9   have such standing, Barela must allege that "she 'has sustained or is immediately in danger of sustaining

10  some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be

11  both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  *City of Los Angeles v. Lyons,* 461 U.S. 95,

12  101-02 (1983).  Barela makes no such allegation.  Barela's sole contention is that the Bane Act authorizes

13  her to seek injunctive relief.  Because Barela does not have standing under the Bane Act, the court

14  dismisses her claim for injunctive relief.

15         **C.   Claim for "Cover Up"**

16         Barela alleges that defendants engaged in a post-shooting "cover up" of damaging evidence.

17  Compl. ¶¶ 32-34, 37.  Defendants correctly assert that Barela's section 1983 cause of action based on

18  these allegations can only proceed if she proves that defendants impaired her constitutional due process

19  right of access to the courts.  *See Delew v. Wagner*, 143 F.3d 1219, 1222-23 (9th Cir. 1998) ("the

20  Constitution guarantees plaintiffs the right of meaningful access to the courts, the denial of which is

21  established where a party engages in pre-filing actions which effectively covers-up evidence and actually

22  renders any state court remedies ineffective").  In response, Barela clarifies that she "does not attempt to

---

23         [10]      Barela also argues that *Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (2004)

24  indicates that *BART* is no longer viable.  In *Venegas*, the California Supreme Court held that a plaintiff
    could state a claim for constitutional violations under the Bane Act if he alleged that the defendant acted

25  with "threats, intimidation, or coercion" but failed to allege that those acts stemmed from discriminatory
    animus.  *Venegas*, 32 Cal. 4th at 842-43.  Barela notes that *Venegas* referred repeatedly to the fact that

26  the Bane Act entitles "any individual" to assert a cause of action.  *See id*. at 841-42.  Yet this hardly reveals
    the high court's disapproval of *BART*.  In addition, Justice Baxter, who wrote separately but formed part of

27  *Venegas*' four person majority, cited *BART* for the proposition that the Bane Act "provides for a *personal*
    cause of action for the *victim of a hate crime*."  *Id*. at 848 (Baxter, J., concurring) (emphasis in original).

28  *Venegas* otherwise did not cite or discuss *BART*.  Thus, contrary to Barela's claim, *Venegas* does not
    suggest *BART*'s demise.

1    assert a separate claim for 'cover-up,'" but merely offers evidence "to help prove that underlying Fourth

2    Amendment violation . . . or to help prove supervisory or municipal liability." Opp. Mot. Dism. at 22:11-

3    14. Thus, the court will not construe Barela's pleadings to state a claim for an independently tortious "cover

4    up."

5           **D.    Claims Against State Entities**

6           In addition to the State of California, Barela names the California Department of Justice, the

7    California Department of Corrections, the Parole Fugitive Apprehension Team, and the Bureau of

8    Narcotics Enforcement in her complaint. Compl. ¶¶ 4-11. Defendants move to dismiss these entities from

9    the complaint. In response, Barela asserts that "[l]ocal police departments are public entities and can be

10   sued for civil rights violations." Opp. Mot. Dism. at 25:17-18. Although Barela is correct, she also alleges

11   that the entities listed above are "departments" of the State of California. Compl. ¶ 5. Therefore, she will

12   get a judgment against the State of California if her claims succeed. *See* Cal. Gov't Code § 900.6 ("'State'

13   means the State any office, officer, department, division, bureau, board, commission, or agency of the State

14   claims against which are paid by warrants drawn by the Controller"). Because the entities listed above add

15   nothing to Barela's lawsuit, the court grants defendants' motion to dismiss them.

16           **E.    Claims Against Davies, Link, Sanchez, and Lara**

17         Defendants argue that Davies, Link, Sanchez, and Lara ("the non-shooting defendants"), who were

18   not present when Walker shot Cardenas, cannot be liable unless they personally participated in the alleged

19   constitutional deprivation. According to Barela, however, the non-shooting defendants can be liable in two

20   ways.[11] First, Barela asserts that the non-shooting defendants can be liable "where their pre-shooting use

21   of excessive and unreasonable force caused an escalation of events that led to the plaintiff's injury." Opp.

22   Mot. Dism. at 15:13-14. For example, Barela claims, in *Alexander v. City of San Francisco*, 29 F.3d

23   1355 (9th Cir. 1994), the Ninth Circuit determined that an allegation that officers "used excessive force in

24   creating the situation which caused [the decedent] to take the actions he did" stated "a classic Fourth

25   Amendment violation." *Id*. at 1366. The flaw in this argument is that, as discussed, Barela cannot assert

26   Cardenas' Fourth Amendment rights. Indeed, unlike this case, the plaintiff in *Alexander* had standing to

27

28   

---

        [11]    Barela also claims that the non-shooting defendants can be liable because they refused to provide Cardenas with necessary medical care. However, defendants did not move to dismiss her allegations in that regard.

1   assert the decedent's Fourth Amendment rights because he was the executor of the decedent's estate.  *See*

2   *id*. at 1357.

3        Barela also contends that the non-shooting defendants can be liable under traditional tort principles

4   of negligence if their pre-shooting conduct was a substantial factor in causing the harm.  Barela alleges that

5   the non-shooting defendants (1) mistook Cardenas for Gonzalez and (2) pursued him in a "dangerous and

6   reckless manner."  Compl. ¶¶ 20, 21.  Defendants note that, before they removed this proceeding, the state

7   court struck "a similar claim" from the Cardenas plaintiffs' First Amended Complaint.  Mot. Dism. at 6:6-

8   12.  Defendants urge this court to apply the prior court's order under 28 U.S.C. § 1450 ("[a]ll injunctions,

9   orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until

10  dissolved or modified by the district court").  The court declines to do so.  For one, the state court's order

11  was directed at the Cardenas plaintiffs, not Barela.  In addition, the order granted the motion "without

12  prejudice to [the Cardenas] plaintiffs bringing a motion for leave to amend to add a separate cause of action

13  grounded upon the alleged vehicle pursuit."  Fong Decl. Supp. Opp. Mot. Dism. Ex. B.  Thus, this court

14  will consider Barela's claim on its merits.

15       The existence and scope of a legal duty is a question of law.  "This is because 'legal duties are . . .

16  merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage

17  done.'  Duty is simply a shorthand expression for the sum total of policy considerations favoring a

18  conclusion that the plaintiff is entitled to legal protection."  *Munoz v. City of Union City*,  120 Cal. App.

19  4th 1077, 1093-94 (2004) ("*Union City*") (quoting *Tarasoff v. Regents of University of California*, 17

20  Cal. 3d 425, 434 (1976)) (citations omitted).  Courts generally balance the so-called *Rowland* factors to

21  determine whether a duty exists.  These factors include (1) the foreseeability of the harm, (2) the degree of

22  certainty that the injured party suffered the harm, (3) the closeness of the connection between the

23  defendant's conduct and the injury, (4) the moral blame attached to the defendant's conduct, (5) the policy

24  of preventing future harm, (6) the extent of the burden on the defendant.  *See Rowland v. Christian*, 69

25  Cal. 2d 108, 112-13 (1968).  In cases involving a public agency, courts also must consider (1) the

26  consequences to the community of imposing a duty of care, (2) the availability, cost, and precedence of

27  insurance, (3) the extent of the agency's powers, (4) the role imposed upon the agency by law, and (5) the

28

1    limitations imposed on the agency by budget.  *See Thompson v. County of Alameda*, 27 Cal. 3d 741,

2    750 (1980).

3         Barela contends that the court does not need to evaluate the *Rowland* factors because the

4    California Supreme Court has already determined that "police ow[e] the decedent a duty of care for their

5    conduct well before [the] shooting."  Opp. Mot. Dism. at 17:8-9.  For support, Barela cites *Grudt v. City*

6    *of Los Angeles*, 2 Cal. 3d 575 (1970) and *Munoz v. Olin*, 24 Cal. 3d 629 (1979).

7         In *Grudt*, the decedent, who was slightly deaf, was driving in a high crime area.  Two plainclothes

8    officers in an unmarked car attempted to stop the decedent, but he did not respond.  *Grudt*, 2 Cal. 3d at

9    581.  Another plainclothes officer approached the decedent's car at a red light and tapped on the window

10   with a shotgun.  The parties introduced conflicting evidence at trial as to whether the officers then shot the

11   decedent or whether he suddenly accelerated first.  *Id*. at 582.  Even though the plaintiff had not mentioned

12   negligence in her complaint, the California Supreme Court held that she could pursue such a claim because

13   she had raised it in the pretrial conference order.  *Id*. at 585-86.  The court then held that there was enough

14   evidence that the officers breached their duty of due care to survive a motion for non-suit.  *Id*. at 587.

15        In *Munoz*, the decedent was walking through an alley where there had been several recent cases of

16   arson.  According to the police, officers witnessed him start a fire and then flee.  *Munoz*, 24 Cal. 3d at

17   633-34.  The decedent's widow sued for wrongful death; the jury returned a verdict for the plaintiffs.

18   Citing *Grudt*, the officers "d[id]not dispute that an officer's lack of due care can give rise to negligence

19   liability for the intentional shooting death of a suspect."  *Id*. at 634.  Instead, the officers contended that

20   there was insufficient evidence of their negligence—a conclusion with which the California Supreme Court

21   ultimately disagreed.  *See id*. at 635-37.

22        However, in *Adams v. City of Fremont*, 68 Cal. App. 4th 243 (1988), without mentioning *Grudt*

23   or *Munoz*, a California appellate court reexamined the *Rowland* factors to hold that "police officers

24   responding to a crisis involving a person threatening suicide with a loaded firearm have no legal duty under

25   tort law that would expose them to liability if their conduct fails to prevent the threatened suicide from being

26   carried out."  *Id*. at 248.  In *Adams*, an armed man situated in brush area in his backyard threatened to kill

27   himself.  The officers' attempts to defuse the situation failed, and the man ultimately died from a self-inflicted

28

1   gunshot wound. *Id*. at 256.  The court of appeal reasoned that the *Rowland* factors suggested that the

2   officers owed the man no duty to prevent his suicide:

> On balance, the relevant public policy considerations militate against imposing a legal
> duty on police officers to take reasonable steps to prevent a threatened suicide from
> being carried out.  The foreseeability and certainty of harm suffered are factors which
> favor imposing a duty.   The absence of moral blame, the remoteness of the
> connection between the conduct of appellants and the harm suffered, the policy of
> preventing future harm, consequences to the community, the role of law enforcement
> in society, and the potential detriment to the public in imposing judicial allocation of
> resources all heavily favor shielding law enforcement personnel from tort liability in
> instances such as this.

8   *Id*. at 276.

9       In *Union City*, another California appellate court extended *Adams* to a situation not just where the

10   police failed to prevent harm, but where "police conduct . . . directly inflicted harm." *Id*. at 1099.  The

11   police responded to a call that a woman with a knife was threatening herself and her family.  The woman,

12   who the police believed was high on methamphetamine, was acting irrationally.  When she began to move

13   in the direction of her father, an officer shot her.  The woman's relatives sued the officer and the city,

14   alleging, *inter alia*, that the police employed unreasonable tactics.  The appellate court determined that the

15   officers owed the woman no duty of care because "the need to protect the overall safety of the community

16   by encouraging law enforcement officers to exercise their best judgment in deciding how to deal with public

17   safety emergencies vastly outweighs the societal value of imposing tort liability for judgments they make in

18   emergency situations." *Id*. at 1097.  Responding to plaintiffs' argument that *Grudt* and *Munoz* held

19   otherwise, the court noted that "neither *Grudt* nor *Munoz* actually analyzed the duty issue or involved a

20   crisis situation such as in the present case." *Id*. at 1100.

21       Defendants argue that *Adams* and *Union City* suggest that defendants' "pre-shooting tactical

22   decisions," including "how they responded to the urgent information they received concerning the

23   whereabouts of fugitive parolee David Gonzalez," and "their actions taken during the vehicle pursuit" did not

24   give rise to a duty of care. Mot. Dism. at 8:28-9:5.  Defendants note that Cardenas "generally does match

25   the description of the fugitive parolee" and "fled from Agent Walker when he followed him to determine his

26   identity." Mot. Dism. at 10 n.3.  Defendants contends that (1) it is not foreseeable that mis-identifying

27   Cardenas and "driving very aggressively" in a "dangerous and reckless manner" would lead to Cardenas

28   being shot, (2) defendants' conduct was not morally blameworthy because they were attempting to

1   apprehend a fugitive parolee, (3) the law already imposes tort liability on police officers for negligent

2   operation of police vehicles,[12] and (4) recognizing a duty here would chill effective law enforcement.

3          The difficulty with defendants' arguments is that this is a motion to dismiss, and the court is bound

4   by the allegations in Barela's complaint.  Barela's allegations are substantially different than defendants'

5   characterization of the facts:

6          Rodolfo Cardenas did not match the physical description of David Gonzalez
           . . . . Without having any reasonable basis to believe that Rodolfo Cardenas had
7          committed or was about to committ [sic] any crime, Defendant Walker and the other
           Individual Defendants pursued Rodolfo Cardenas, who was driving a van.
8          Defendants pursued Rodolfo Cardenas in unmarked cars . . . without proper
           emergency lights or sirens, at a high rate of speed . . . . Rodolfo Cardenas stopped
9          the van he was driving . . . got out . . . and ran.

10  Compl. ¶¶ 19-22.  Thus, two of defendants' central factual claims— that (1) Gonzalez and Cardenas look

11  alike and that (2) Cardenas fled from Walker when Walker tried to determine Cardenas' identity—are not

12  mentioned in the complaint.

13         Based on Barela's allegations, the court cannot absolve the non-shooting defendants from owing a

14  duty of reasonable care toward Cardenas.  *Adams* and *Union City* are manifestly different.  Both cases

15  rejected claims that police tactics during stand-offs could give rise to a duty of due care.  Here, according

16  to Barela, the non-shooting defendants mistook Cardenas for Gonzalez and then pursued him without

17  identifying themselves as police officers.  While *Adams* and *Union City* were reluctant to impose the

18  specter of tort liability upon officers who must decide how to approach a delicate, pre-existing, and

19  hazardous situation, Barela alleges that the non-shooting defendants' own conduct created danger out of

20  whole cloth.  In addition, both *Adams* and *Union City* had the benefit of a full-fledged factual record.

21  Here, at this early stage, this court cannot adequately evaluate *Rowland* factors such as the moral

22  blameworthiness of the non-shooting defendants' conduct and the burden that recognition of a duty of care

23  in these circumstances would impose upon police.  Moreover, defendants' claim that tort law already

24  imposes liability for the negligent operation of police vehicles is belied by their later attempt to seek

25  immunity under California Vehicle Code section 17004, which exempts public employees from damages

26

27

28         [12]     Defendants cite Cal. Veh. Code § 17001 (public entity liable for negligent or wrongful
       operation of motor vehicle) and Cal. Gov't Code § 820(a) (public employees generally liable to same
       extent as private person).

1    while responding to emergencies.  For these reasons, the court denies the non-shooting defendants' motion

2    to dismiss Barela's negligence claim.

3        **F.       Immunity**

4        Defendants argue that (1) they are immune from any injury that results from a vehicle pursuit, (2)

5    they are immune for their "discretionary acts" during the pursuit, and (3) the State of California is immune

6    from liability.  The court disagrees.

7        First, defendants argue that California Vehicle Code section 17004 shields them from liability for

8    Cardenas' death.  That provision states that "[a] public employee is not liable for civil damages on account

9    of personal injury to or death of any person . . . resulting from the operation, in the line of duty, an

10   authorized emergency vehicle while responding to an emergency call or when in the immediate pursuit of an

11   actual or suspected violator of the law . . . ."  Cal. Veh. Code § 17004. However, Cardenas' death did not

12   "resul[t] *from* the operation" of an emergency vehicle.  No case of which the court is aware has applied

13   Vehicle Code section 17004 to a post-pursuit shooting.

14       Defendants also argue that they cannot be liable for their "discretionary" decision to pursue

15   Cardenas in unmarked cars without lights or sirens.  California Government Code section 820.2 provides

16   that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from

17   his act or omission where the act or omission was the result of the exercise of the discretion vested in him,

18   whether or not such discretion be abused."  However, "[t]here is no immunity 'if the injury . . . results, not

19   from the employee's exercise of discretion vested in him to undertake the act, but from his negligence in

20   performing it after having made the discretionary decision to do so.'"  *Martinez v. City of Los Angeles*,

21   141 F.3d 1373, 1379 (9th Cir. 1998) (quoting *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261

22   (1969)).  Because the court has rejected defendants' argument that they had no duty of care during their

23   pursuit of Cardenas, whether they were negligent is an open question.  Thus, discretionary immunity is

24   inappropriate.

25       Finally, defendants argue that the State of California is immune from liability here.  California

26   Government Code section 815.2 provides that "[e]xcept as otherwise provided by statute, a public entity is

27   not liable for an injury resulting from an act or omission of an employee of the public entity where the

28   employee is immune from liability."  Defendants argue that because they are immune under Vehicle Code

1   section 17004 and Government Code section 820.2, the state cannot be liable for their actions.  As noted

2   above, the court holds that defendants are not immune under these statutes.  Thus, the court denies

3   defendants' immunity arguments.

4   **G.      State Constitutional Claims**

5   Barela seeks damages under Article I, sections 1 and 13 of the California Constitution. Compl. ¶¶

6   43-45.  Defendants move to dismiss these claims on the grounds that neither provision authorizes a private

7   right of action for money damages.  Article I, section 1 of the California Constitution ("section 1") provides

8   that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying

9   and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining

10  safety, happiness, and privacy."  Article I, section 13 of the California Constitution ("section 13") is similar

11  to the Fourth Amendment of the United States Constitution:

12          The right of the people to be secure in their persons, houses, papers, and effects
            against unreasonable seizures and searches may not be violated; and a warrant
13          may not issue except on probable cause, supported by oath or affirmation,
            particularly describing the place to be searched and the persons and things to be
14          seized.

15  In *Katzberg v. Regents of the University of California*, 29 Cal. 4th 300 (2002), the California

16  Supreme Court elucidated how courts should determine whether a provision of the state constitution gives

17  rise to a private right of action for damages.  The court first looked to "whether there is evidence from

18  which we may find or infer, within the constitutional provision at issue, an affirmative intent either to

19  authorize or to withhold a damages action to remedy a violation." *Id*. at 317.  Where there is no such

20  intent, the court instructed other courts to evaluate (1) whether there are other, adequate remedies, (2) the

21  extent to which a constitutional tort would change established tort law, and (3) the importance of the

22  particular constitutional provision. *Id*.  Even if these factors suggest recognizing a constitutional tort, courts

23  must also weigh "the existence of any special factors counseling hesitation in recognizing a damages action,

24  including deference to legislative judgment, avoidance of adverse policy consequences, considerations of

25  government fiscal policy, practical issues of proof, and the competence of courts to assess particular types

26  of damages." *Id*.

27  Defendants rely exclusively on *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d

28  1224 (1990).  In *Clausing*, a student sought money damages under section 1 based on allegations that a

teacher had beaten and humiliated him.  The trial court sustained defendants' demurrers.  The court of

appeal affirmed, reasoning that section 1 only authorizes injunctive relief:

> Although citizens have a private cause of action against public entities for violation of the right to privacy, no case has ever held that California Constitution, article I, section 1, imposes a mandatory duty on public entities to protect a citizen's right to privacy.  The constitutional mandate is simply that the government is prohibited from violating the right; if it does, an aggrieved citizen may seek an injunctive remedy in court.

Id. at 1238.  However, *Katzberg* seemed to disapprove of *Clausing*.  Indeed, *Katzberg* noted that

*Clausing* "summarily concluded" that money damages were unavailable and "overlooked" *Porten v.*

*University of San Francisco*, 64 Cal. App. 3d 825, 829 (1976), which overruled a demurrer on a cause

of action that sought money damages under section 1.  *See Katzberg*, 29 Cal. 4th at 315 n.16.  In addition,

defendants' argument that section 13 does not create a private right of action consists of three sentences:

> A plaintiff claiming an unreasonable search and seizure already has . . . a possible action for wrongful death, negligence, battery, and violation of civil rights under [section] 1983.  These alternative remedies, thus, weigh against creating a damages action under Article I, Section 13.  Further, no California case has recognized a damages action under Article I, Section 13.

Mot. Dism. at 17:11-16.  Defendants make no argument about *Katzberg*'s most important factor: the

existence of intent either to authorize or withhold a damages remedy.[13]  Yet Barela's briefing on these issues

is even more sparse.  Citing space constraints, Barela does not mention the *Katzberg* factors at all.  The

court is thus inclined to dismiss Barela's state constitutional theories without prejudice.  If Barela wishes to

submit additional briefing on the *Katzberg* factors, she may do so.[14]

---

[13]     *Katzberg* reserved the question of whether the existence of a section 1983 claim is an "adequate remedy."  *See Katzberg*, 29 Cal. 4th at 328 n.29.  Defendants simply assume that it is.

[14]     If Barela wishes to pursue these claims, she should address whether her lack of standing to bring a Fourth Amendment claim dooms her section 13 claim.  California courts originally followed the "vicarious exclusionary rule," where, unlike federal law, "a defendant had standing to object to the introduction of evidence seized in violation of the rights of a third person."  *In re Lance W.*, 37 Cal. 3d 873, 879 (1985).  This changed when California voters passed Proposition 8 on the June 1982 primary election ballot, adding section 28(d) to article I of the state constitution.  Although Proposition 8 abrogated the "vicarious exclusionary rule," *see In re Lance W.*, 37 Cal. 3d at 892-95, it states only that "relevant evidence shall not be excluded in any criminal proceeding."  Cal. Const. Art. I. § 28.  Although the court takes no position on the issue, it notes that if section 13 authorizes a private right of action, it is entirely possible that Proposition 8 did not foreclose the possibility of its vicarious assertion.

**H.     Remand Issues**

The Cardenas plaintiffs move to remand on grounds that (1) the removal was untimely; and (2) the federal court lacks subject matter jurisdiction.

**1.     Timeliness of Removal**

Defendants who want to remove a case to federal court must file a notice of removal within 30 days after receipt of the first pleading in the state action that sets forth a removable claim.  28 U.S.C. § 1446(b):

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

The Cardenas plaintiffs argue that the "other paper" can be unfiled papers, *see Addo v. Globe Life & Acc. Ins. Co.,* 230 F.3d 759, 761 (5th Cir. 2000), or deposition testimony.  *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir. 1996); *Huffman v. Saul Holdings Ltd. Partnership,* 194 F.3d 1072,1078 (10th Cir. 1999).  They further contend that removal was untimely because defendants had notice of Barela's federal civil rights claims at the latest on December 22, 2004, the date of a letter sent by the State to counsel for Barela.

The court has reviewed both the text of the December 22, 2004 letter from Supervising Deputy Attorney General Tyler Pon and the Stipulation to Permit Complaint in Intervention by Decedent's Mother, Dora Barela.  Nothing in the text of either document states that Barela intends to make a federal claim.  The only specific grounds for intervention named was Barela's standing under state code provision Cal. Civ. Proc. Code section 377.60 to assert a wrongful death claim.  Thus, even if this court were to adopt the rule of the Fifth and Tenth circuits, Cardenas plaintiffs name no "other paper" sufficient to put defendants on notice of Barela's federal claims prior to January 31, 2005.

Defendants allege they received a copy of the Complaint in Intervention by mail on February 2, 2005.  Since defendants filed their notice of removal within 30 days of January 31, 2005, on February 28, 2005, removal was timely.

1

## 2.    Subject Matter Jurisdiction

2

### a.    Federal Question

3       Federal courts have removal jurisdiction if a civil action commenced in state court might have been

4   brought originally in federal court.  28 U.S.C. § 1441(a).  The statute defines a federal question in pertinent

5   part as follows:

6           Any civil action of which the district courts have original jurisdiction founded on a
            claim or right arising under the Constitution, treaties or laws of the United States

7           shall be removable without regard to the citizenship or residence of the parties.

8   28 U.S.C. § 1441(b).

9       The Cardenas plaintiffs argue that the court lacks subject matter jurisdiction.  First, they argue that

10  Barela lacks standing to assert Fourth Amendment and "cover-up" claims pursuant to 42 U.S.C. sections

11  1983 and 1988.  Second, the Cardenas plaintiffs argue that Barela's Fourteenth Amendment claim for

12  deliberate interference in her right to familial relationship does not rest on any federal statute, but instead

13  depends on Cal. Civ. Proc. Code section 377.60(b).  The Cardenas plaintiffs rely on *Chavez v.*

14  *Carpenter*, 91 Cal. App.4th 1433 (2001) to support this contention.  *Chavez* addresses dependent

15  parents' standing under section 377.60.  It does not decide who may bring a federal claim under 42 U.S.C.

16  section 1983.

17      Defendants counter that section 1983 created a cause of action for federal constitutional violations.

18  *Buckley v. City of Redding,* 66 F.3d 188, 190 (9th Cir. 1995).  "'Section 1983 provides a cause of action

19  for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the

20  United States.'" *Id*. (quoting *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990)).  Defendants are

21  correct.  Section 1983 provides the cause of action, not the state code.  Barela's First and Fourteenth

22  Amendment claims on her own behalf survived defendants' motion for dismissal.  Thus, the court retains

23  federal question jurisdiction over these claims.

### b.    Supplemental Jurisdiction

24

25      Supplemental jurisdiction over the remaining claims is discretionary, including claims that involve

26  intervention:

27          Except as provided in subsections (b) and (c) or as expressly provided otherwise
            by Federal statute, in any civil action of which the district courts have original
28          jurisdiction, the district courts shall have supplemental jurisdiction over all other
            claims that are so related to claims in the action within such original jurisdiction

1  that they form part of the same case or controversy under Article III of the United
2  States Constitution. Such supplemental jurisdiction shall include claims that
   involve the joinder or intervention of additional parties.

3  28 U.S.C. § 1367(a).  If the claims are transactionally related, the federal court has jurisdiction over the

4  state law claims of persons who are to parties to the federal claim.  *Mendoza v. Zirble Fruit Co.,* 301

5  F.3d 1163, 1173-74 (9th Cir. 2002).  When an action is properly removed based on a claim arising under

6  the Constitution, treaties, or laws of the United States per 28 U.S.C. § 1441(b), the court may not remand

7  the entire action.  *Ukiah Automotive Investments v. Mitsubishi Motors of North America,* Slip Copy,

8  2004 WL 2623229, 1 (N.D. Cal., 2004).  However, the court may remand matters in which state law

9  predominates:

10  Whenever a separate and independent claim or cause of action within the
    jurisdiction conferred by section 1331 of this title is joined with one or more
11  otherwise non-removable claims or causes of action, the entire case may be
    removed and the district court may determine all issues therein, or, in its
12  discretion, may remand all matters in which State law predominates.

13  28 U.S.C. § 1441(c).

14      The Cardenas plaintiffs' and Barela's claims all arise out of the same transaction: the shooting death

15  of Cardenas.  The wrongful death claims in particular must be consolidated in a single cause of action, and

16  dependent parents do not have a separate and independent cause of action from the heirs or personal

17  representative.  *Mayerhoff v. Kaiser Foundation Health Plan, Inc.,* 71 Cal. App. 3d 803, 805 (1977);

18  *see also Villaman v. Schee,* 15 F.3d 1095, 2 (9th Cir. 1994).

19      The Cardenas plaintiffs argue that this court should remand because state claims predominate.

20  They argue that "predominate" should be interpreted as follows: "If the federal court finds that the federal

21  claim, while plausible, is not really the plaintiff's main mission, that it is only an incident or adjunct of the

22  state claim, and that the state claim is the crux of the action, the federal court can remand all claims in which

23  it finds that state law 'predominates.'" David A. Seigel, *Commentary on 1988 and 1990 Revisions of*

24  *Section 1441.*  They argue that the state claims predominate because (1) the federal law raised by Barela is

25  not essential to her cause of action; (2) no construction of federal law is implicated (3) there is no showing

26  her federal rights cannot be enforced in state court through section 377.60.

27      Defendants counter that the standard for supplemental jurisdiction is properly met when all claims

28  arise out of the same case or controversy and plaintiffs do not allege that the state issues are "more

1   important, more complex, more time consuming to resolve, or in any other way more significant than their

2   federal counterparts," *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 790 (3rd Cir. 1995) (denying

3   remand); *see also Miller v. Lovette,* 879 F.2d 1066 (2nd Cir. 1989) (finding it an abuse of discretion to

4   deny supplemental jurisdiction over state tort claims brought in conjunction with federal civil rights claims

5   alleging excessive use of force).  Defendants argue that the Cardenas plaintiffs do not allege facts supporting

6   a finding that state issues predominate.

7        Defendants also contend that supplemental jurisdiction also depends on economy, convenience,

8   fairness and comity, *Harrell v. 20th Century Ins. Co.,* F.2d 203 (9th Cir. 1991), and that to sever the

9   claims would prejudice the parties, add expense and could lead to inconsistent results.  The court agrees.

10  The claims all arise out of the same transaction.  The Cardenas plaintiffs have not demonstrated that the

11  state law issues predominate over the federal constitutional claims.  Thus, the court retains supplemental

12  jurisdiction over all claims in this case.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# III.  ORDER

For the foregoing reasons, it is hereby ordered as follows:

1.   Dora Barela's claims under the California Code of Civil Procedure section 377.30 are DISMISSED with leave to amend;

2.   Dora Barela's claim under 42 U.S.C. section 1983 for violation of the decedent's Fourth Amendment rights is DISMISSED with leave to amend;

3.   Dora Barela's claim under California Civil Code section 52.1 is DISMISSED with leave to amend;

4.   Dora Barela's claim for injunctive relief is DISMISSED with leave to amend;

5.   Barela's claim for damages under Article I, sections 1 and 13 of the California constitution is DISMISSED with leave to amend;

6.    Defendants' motion to dismiss Dora Barela's Complaint in Intervention against the California Department of Justice, the California Department of Corrections, the Parole Fugitive Apprehension Team, and the Bureau of Narcotics Enforcement as separately named defendants is GRANTED;

7.   Defendants' motion to dismiss Barela's alleged "cover up" claim is MOOT;

8.   Defendants' motion to dismiss Barela's claims for individual liability of defendants Davies, Link, Sanchez, and Lara is DENIED;

9.   Cardenas plaintiffs' motion to remand this entire action to state court is DENIED.

DATED:      5/20/05                    /s/ Ronald M. Whyte

RONALD M. WHYTE
United States District Judge

1    **A copy of this order was emailed on** _____5/20/05_____ **to:**

2

3    **Counsel for Jeanette Cardenas, et. al.:**

4    John C Stein              boccardo@boccardo.com

5    **Counsel for Dora Barela:**

6    Julia Sherwin             haddad.sherwin@sbcglobal.net
     Michael J. Haddad         haddad.sherwin@sbcglobal.net
7

8    **Counsel for Defendants:**

9    Craig Eugene Modlin       Craig.Modlin@doj.ca.gov
     Tyler Bruce Pon, Esq.     tyler.pon@doj.ca.gov
10

11   Counsel are responsible for distributing copies of this order to co-counsel, as necessary.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28